May it please the court, Christopher Stender on behalf of the petitioners, Sukhnand Singh et al. I'd like to reserve two minutes of my time for rebuttal, please. You bet. Thank you. Given the facts of this case and the development of the law, it is the petitioner's position that this case should be remanded not only to the BIA, but back to the immigration judge for further proceedings and additional fact-finding. In our briefs, both the government and the petitioner are in agreement that this case should review both the May 13, 2000 decision of the Board of Immigration Appeals and the January 17, 2007 decision of the immigration judge. Counsel, if we were to conclude that substantial evidence does support the determination of firm resettlement in the Philippines and also that there was no persecution in the Philippines, would we have to decide any other issues in the case? And I know you don't concede those points, but I'm again trying, as I was in the previous case, to sort of proceed in an orderly fashion in my own mind. I would point out something kind of interesting. I think, first of all, regarding the substantial evidence standard on firm resettlement, the immigration judge never considers or discusses the restrictions that the petitioner testified to and whether they impacted firm resettlement. As pointed out by the government's 28J brief... Counsel, that's not really responsive. I'm asking a more theoretical question. I know you don't agree that there was firm resettlement, but if we were to disagree with you on that and conclude that firm resettlement was adequately demonstrated and found and that the Philippines was not a place of danger for your clients, would we have to go on and decide anything at all about India? That would be correct. If he found firm resettlement, then he would have to return to the Philippines and conditions in India would not be important and would not enter into... Okay. I understand you don't agree with the premise of the question, but I just wanted that piece in my own head. Counsel, if I could interject a question to you on that. As I understand it, the agency designated India and the Philippines as countries of removal. So, I mean, how could we tell the agency, you have to send him to the Philippines as opposed to India? I mean, are we permitted to do that in the absence of making a decision that there's a problem with sending him to India? That is a very interesting question that you're asking, Judge Gould, and it wasn't addressed in the briefs. But by operation of law, the government is free to go through not only what has been designated by the immigration judge as potential countries of deportation, but there's a, by statute, a list of different places which are countries that the government, the agency, can look to to remove somebody. So when, in a situation like this, it does become an interesting question and how the court would analyze that and whether or not, but again, it wasn't addressed in the briefs, and I don't have an exact answer for you, Judge Gould. Because we could ask for supplemental briefing if we're not sure what we think the law is on that. Thank you. I did want to raise, as I was getting on, when Judge Graber, you asked me a question regarding the firm resettlement and the substantial evidence standard, I think what has been pointed out in the government's 28-J brief is that the Board of Immigration Appeals, after the 2008 decision, announced kind of a four-step analysis in 2011 in a matter of AGG, and the government's 28-J brief cites a matter of DX and YZ, which came out January 6, 2012, which really puts out a four-step analysis regarding firm resettlement. And I think what's most fascinating here is all the evidence of firm resettlement was presented by the petitioner. And the government, what they did simply was question and try to bolster the fact and argue the firm resettlement based on the evidence that the petitioner already... There's nothing inherently wrong with that, is there? If the petitioner, I mean, I know he didn't say this, but he said, boy, I love it in the Philippines, it was fabulous. I mean, so the agency shouldn't have to close its eyes to that, should it? Well, that's exactly what they do say. The first factor in a matter of DX and YZ is that the DHS bears the burden of presenting prima facie evidence, and the DHS should secure and produce direct evidence of governmental doctrine. Except that doesn't make any sense if you take it as literally as you want us to, because what that would mean is that every petitioner could succeed by explaining that firm resettlement had occurred, and King's X, now the agency can't actually find firm resettlement because I've testified to it. That seems like a very odd rule. It may seem like an odd rule. It was the standard announced by the BIA. It's a high standard. It puts the burden not only of evidence, but the burden of production on the DHS. I understand the court's concern regarding that, and I'm not saying that the court or the immigration judge should ignore the evidence... That rule was constructed in the context of a situation where it had... I mean, sort of for the average case, where, okay, who has to come forward with evidence if there isn't any? Maybe true, but again, it's an analysis that was announced after the decision, and the immigration judge doesn't, of course, apply it, and the DHS wasn't perhaps bound by it at that time because it came out about three years afterwards. But the decision by the BIA was in 2008. The IGA was 2007. Matter of ATG came out in 2011. Even disregarding the new standard that's been announced, which I think should be applied to this case, and that's why, as I started out by saying, this case should be remanded, because the immigration judge, in his decision, doesn't even look at the factors that are elicited and make any kind of analysis of whether the restrictions that the petitioner put forth would impact firm resettlement to the Philippines. The BIA looks at the decision and says, moreover, as discussed infra, there are no impediments to firm resettlement in the Philippines, but then they never go on and discuss specifically what those impediments might have been and how they have attached or would impact firm resettlement in the BIA decision. Now, the other point that I'd like to make that I think is very important in this case is the immigration judge, of course, finds the petitioner incredible and bases his decision on that. When it goes up to the BIA, the BIA agrees with the brief of the petitioner, the appellant to the BIA, and says, no, we are going to find him incredible, but we're going to go ahead and look at different issues. Basically, we're going to say that there has not been past persecution. The BIA goes ahead and basically does its own factual analysis, its own fact-finding, and makes a decision that there has been no past persecution and denies it on that basis. They say that the new basis is now that the incidents do not rise to the level of past persecution, which is a finding that the immigration judge never makes. He bases his denial based on the lack of credibility of the petitioner. So, again, I think there's another situation where this case should properly be remanded, not only because there's been subsequent developments in the law,  goes to the BIA, the BIA reverses it, finds him incredible, and then engages in its own fact-finding and makes its own decision based on finding that the past persecution is not sufficient under the law. Also problematic in this case is the CAT finding that the IJ makes. If you look at the immigration judge's decision on the CAT claim, he denies it because of a lack of credibility, which is not sufficient. Obviously, even if under this court's precedent, even if there's a lack of credibility, the immigration judge needs to make an independent analysis of whether or not country conditions are sufficient in order to grant Convention Against Torture. Also, the immigration judge and AR-89 seem to suggest that there is a nexus requirement under CAT, which again is another ground, another error, another ground why this case should be remanded back to the immigration judge. Thank you. Do you want to reserve a minute, Mr. Spadafore? I'll reserve what I have left. Thank you very much. Good morning. Good morning, Your Honors. Tim Remnitz on behalf of United States Attorney General Eric H. Holder, Jr. This immigration case, the Board of Immigration Appeals, and the immigration judge properly denied Kishner's claims for asylum withholding approval and CAT protection as to both India, where he was a citizen, and the Philippines, where he was a lawful permanent resident. Starting first with an asylum claim from India, the Board properly found he was ineligible for asylum from India because he was firmly resettled in a third country, in this case the Philippines. Let me ask you a variant of the question Judge Graber asked Mr. Stender. If we were to conclude that there's no reason whatsoever why they can't remove Mr. Singh to the Philippines, is there any reason we have to even worry about India? I mean, if they're going to kick him out, they're going to kick him out. It's the government's position that should you find he's removable to the Philippines, there's no impediments to his removal. The court should nonetheless adjudicate his claims as to India. Is that because the order is in the alternative, and the Attorney General has the discretion to pick from his two that he's ordered? That's exactly it. Under 1231E3, I believe, as Mr. Stender noted. Under that statute, the Attorney General has the discretion to pick, or there's a list which he goes through. Of course, that's after this PFR is either denied or affirmed. Supreme Court stated in U.S. v. JAMA 2005, in deciding a petition for review, you should not take into account whether that country will ultimately accept that petitioning. That's for the Attorney General to go through in 1231. We ran across a case from the 8th Circuit where a guy's from Togo, and there's a problem sending him to Togo, and so they sent him back. The court upheld sending him back to the Ivory Coast and held in abeyance any kind of further proceeding. Hitting word from the Attorney General whether they couldn't send him to the Ivory Coast. Basically, they said, if you can't send him to the Ivory Coast, come on back, and we'll worry about Togo. Yes, that is what happens later on. It should not factor into this PFR, deciding this PFR, because I just noted, as the Supreme Court stated, that is what the Attorney General works out later,  and there are travel documents and there's issues such as that 8th Circuit case where it's just not possible, and you have to figure out what to do. Counsel Judge Gould, if I could ask you a question, please. The problem I'm having with the government's position relates solely to CAT, and my question on CAT as to India, for example, is this. There's a case called Aguilar-Ramos v. Holder. Judge Hawkins wrote the opinion. I think I was on the panel. The opinion relied on Camalthus. It says, quote, the failure of the IJ and BIA to consider evidence of country conditions constitutes reversible error. And then it also says that the government argues that the country report fails to demonstrate a likelihood of torture by the government or with the government's acquiescence. Such an argument is premature because the BIA failed to consider the country report at all. The proper course of action is to remand with instructions that the BIA reconsider Aguilar's CAT claim in light of the country report. Now, here, when I look at the India country report, it doesn't seem to me to tie in with the position of Petitioner, certainly not explicitly. But yet, as I've read the BIA decision and IJ decision, they just didn't talk at all about the India country reports. So why aren't we required, as a matter of precedent, to remand the CAT claim, for India at least, under Aguilar-Ramos? Well, under case law as well. The Board is presumed to have considered all the evidence of the record, and in its opinion does not have to cite every piece of record it considered. It can be presumed to have considered that 2005 country report that is in the record that states that the Indian government generally respected the rights of its citizens. What the Board considered was the facts of Mr. Singh's individual case. And there have been occasions where the agency has been faulted for using a country report to discredit certain instances that the Petitioner has alleged occurred to him. So in this case, the Board did not discredit Petitioner as regarding a country report. It just looked at the particular facts of his case and found it did not constitute torture. Right, but just referring to that Aguilar holding which relied on Kamalthus, can we presume that the agency looked at the country report? I believe you can presume the agency looked at the country report, and if you want to go a step further, it would be harmless error, because country conditions have, well, I'm not sure my knowledge of these. Well, one thing in the BIA's decision at Administrative Record 4, they do cite the regulation in the paragraph discussing CAT 1208.16c3, which requires the agency to look at several things, including the conditions in the country of removal. So that would be another basis you wouldn't have to assume, in a sense, because they say they're following this regulation. Yes, I would agree with that. I'm going to go back to the Affirmative Settlement finding. As Mr. Stender pointed out, the agency denied his claim for asylums to India, based on Affirmative Settlement, but before the board, Mr. Singh did not challenge that finding whatsoever. None of his appellate filings did he challenge, but the government had his burden of proof showing Affirmative Settlement. What he now argues in his opening brief is that he met his burden of showing an exception applied to that Affirmative Settlement finding. Let's assume that you're right about Affirmative Settlement, so he's disqualified from asylum. He still can get withholding and CAT relief from India, right? That's correct. Why isn't he entitled to withholding if he's deemed credible? The board did deem him credible. He's not entitled to withholding or removal from India because, as the agency promptly found, he failed to show an access between his mistreatment and one of the five statutorily protected grounds under the INA, being race, religion, nationality, membership in a particular social group, or political opinion. Why isn't political opinion implicated here because of the business with, was it his cousin? Yes, his cousin. He argues imputed political opinion, but in each of the three arrests, the 1992, 1999, and 2003 arrests, he stated in his testimony that they arrested him and interrogated him to find out the whereabouts of his cousin, Ranjit Singh, who they perceived to be a militant or terrorist. Okay, so they're not investigating a bank robbery. They're talking about this guy's cousin's political activities. They're considering him as a terrorist or a security threat because, as this court has documented as jurisprudence, members of the Sikh Separatist Movement, and in this case they are presumed to be a member of the Khalistan Commando Force, have engaged in terrorist activities such as assassinating individuals and using explosives. And the Indian government was trying to find out information on what they perceived to be a militant or terrorist. And in each case, they questioned him about his cousin, and Mr. Singh stated in his testimony he associated with frequently before his cousin went underground in 1990 and went into hiding. Okay, let's assume then that it's an investigation into his cousin on criminal grounds and not political. Why isn't what happened to him torture in India? Well, as the board explained, in each instance Mr. Singh stated he was beaten by the authorities during detention. However, his injuries describe bruising and swelling. Well, I mean, it's possible to be tortured like waterboarding and have no visible injuries. I mean, that's not to be all and end all whether he's got physical bruises. That's true. So what does that prove? But in this case, the record has to compel a finding of torture contrary to what the agency found. And you can affirm that finding as long as you find the record does not compel he was tortured, that the board had a reasonable basis for finding that being hit on the buttocks with a plaque in his first arrest and later on using holistic remedies only, such as he described a tumeric milk and hot water mixture to treat these bruises, did not rise to the level of torture. He was beaten on his buttocks and his feet? But a plaque on his buttocks in the first arrest. He's beaten on his feet in the third arrest, I believe. How many times does he have to have that happen to him? Well, it's not for me to speculate. Well, I mean, I'm having a hard time finding if he's true, if he's telling the truth, and we have to assume that he is because the board assumed that he is. I don't know why that isn't torture. Well, the court can differ. Reasonable minds could differ over this because being beaten and just having bruising and swelling in the board's viewpoint did not rise to the severity of torture. Others could disagree and say that I think that constitutes torture, but it doesn't compel a finding of torture under the court's standard of review. So in that case, the agency can be affirmed to properly deny cap protection as to any... One of the things that sort of kicked off our discussion about just sending him back to the Philippines, some of these are tricky questions whether this amounts to torture or not, whether they're investigating a terrorist or imputing a political opinion. These are kind of tricky things. On the other hand, if there's no reason they can't send him back to the Philippines, that seems like the quick and dirty way to dispose of this. As the government would state, though, those claims from India should be adjudicated because this case... Even if it prolongs his stay here in the United States. Yes, because under this court's jurisprudence, there's a case, Shea v. Holder in 2010, which seems to indicate he has due process right even if it's not the ultimate country removal. As long as the government is proposing to remove him to a certain country, he has due process right to have those claims adjudicated. So the court should adjudicate both countries' claims. If he waives that right, that's his right? If he waives that right, that's okay with you? But the government states it's a due process matter. You should have both countries' claims adjudicated, but the court can still deny the petition for review if it finds he's removable to the Philippines. If Mr. Stender comes back and says, if you're going to uphold his removal to the Philippines, we just assume you didn't deal with India, that would be okay with you if he could waive that? The government would still request you adjudicate his claims. Okay. Because it's got nothing to do with due process rights, I guess. It's a matter of judicial economy as well. You don't want to play ping pong between the courts. Except that if an issue is conceded for any reason once a case is here, if someone has raised, say, a contract claim and a tort claim, and they stand up and they say, never mind about the tort claim. They can't revive it later. Well, if he wants to go on the record and state with the court that he concedes those claims as to India, then, sure, the court may not adjudicate those claims, because that will be on the record then, that we can state that he waived those claims. But if he does not, and we do not want the case coming back up. I understand. Thank you. Mr. Stender, you've got about a minute left, I think. Well, if what I've said here is in terms of considered to be a concession of whether or not the court should analyze this case under the government's shady holder, I certainly think that whatever due process rights the petitioner has under that case, the court should consider them. And I certainly don't want to waive any further review or analysis that the petitioner has. And if I said something to that effect, then I don't want the court to have that impression. So that's all I wanted to add. Is there anything else? No. Not for me. Thank you. No questions here. Thanks. Thank you. Thank you. Mr. Remnitz, thank you too. We especially appreciate your cooperation with our plumbing disaster today. The case to start is submitted.
judges: Silverman, Graber, Gould